IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:                                    CASE NO. 15-09390 (ESL)

AUGUSTO'S CUISINE CORPORATION            CHAPTER 11

    Debtor

OPINION AND ORDER

This case is before the court upon the *Objection to Confirmation of Debtor's Amended Plan of Reorganization* (Docket No. 127) filed by Luis Alvarez, shareholder of the Debtor (hereinafter referred to as "Mr. Alvarez") and the *Limited Response to Luis Alvarez's Objection to Confirmation of Debtor's Amended Plan of Reorganization* (Docket No. 164) filed by the Debtor. Also before the court is the *Joint Motion in Compliance with Court Order* filed by the Debtor and creditor TKL Holdings III (PR), LLC (hereinafter referred to as "TKL") and Mr. Alvarez's *Response to Debtor, TKL, and Mr. Rodriguez's Respective Memorandum of Law* (Docket No. 174).

On October 17, 2016 a confirmation hearing regarding Debtor's *First Amended Plan of Reorganization Dated July 8, 2016* (Docket No. 116) was held in which the parties argued their positions. Mr. Alvarez's objection to the Debtor's amended Plan of reorganization is based upon the following: (i) two (2) impaired classes (Class 2 and Class 4) have voted against the plan, and thus, the plan has to be confirmed under 11 U.S.C. §1129(b), and the new value exception must be analyzed; (ii) even if the plan is confirmed under 1129(a), the new value exception has to be analyzed to determine whether Mr. Alvarez's shares can be wiped out under the plan. Moreover, there is not enough new value to justify wiping away Mr. Alvarez's shares; and (iii) the plan lacks feasibility as evidenced by the monthly operating reports ("MORs"). TKL and Debtor's Principal, Mr. Ariel Rodriguez both agree that the plan may be confirmed pursuant 1129(a) and thus, the absolute priority rule does not apply. Debtor's Principal argued

-1-

the following: (i) the amended plan has received a vote in favor from all creditors that voted. As to Class 2, there is case law that interprets the failure to vote as an acceptance of the plan; (ii) the law of the case and collateral estoppel prevent Mr. Alvarez from raising objections to the post-petition financing; (iii) even if the absolute priority rule applies (which Mr. Rodriguez denies) the conglomeration of factors provided by Mr. Rodriguez complies with the case law interpreting the new value exception; and (iv) Mr. Alvarez does not have standing to object to portions of the amended plan that do not affect him. He can only object to the portion of the plan that affects him (Docket No. 195). For the reasons stated below, Debtor's First Amended Plan of Reorganization may not be confirmed pursuant to section 1129(a) or 1129(b) because it fails to comply with 11 U.S.C. §1129(a)(9)(C) and 1129(a)(11).

Jurisdiction

The court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding pursuant to 28 U.S.C. §157(b)(1) and (b)(2)(L). Venue of this proceeding is proper under 28 U.S.C. §§ 1408 and 1409.

Procedural Background

The Debtor filed a Chapter 11 bankruptcy petition on November 25, 2015. On February 9, 2016, the Debtor filed an *Urgent Motion to: (A) Approve Post-Petition Financing; and (B) Approve Settlement Agreement with the Department of the Treasury of the Commonwealth of Puerto Rico; and (C) Shorten the Period to Respond to this Motion to Ten Days* (Docket No. 44). Also on February 9, 2016, a status conference was held in which the court ordered the following: "The request to shorten time in Debtor's urgent motion (Dkt. #44) is granted. The time is shortened to ten (10) days. If no opposition, the motion will be approved in its entirety, that is, approving the post-petition financing and the settlement agreement with the Treasury Department. The court finds that both are in the best interest of the estate. Debtor to submit proposed Order" (Docket No. 47). On February 24, 2016, the court approved the post-petition financing and settlement agreement with the Treasury Department (Docket No. 51).

-2-

On March 24, 2016, the Debtor filed amended Schedule E/F: Creditors who have unsecured claims, and amended Statement of Financial Affairs for Non-Individual, disclosing in Part 13, line item #28, that the Debtor's officers and shareholders and the % of interest, if any, was the following: (i) Ariel Rodriguez, president and shareholder, 33.1% interest; (ii) Alexander Vega, shareholder and 33% interest; (iii) Luis Alvarez, shareholder, 33% interest; and (iv) Zerymar Ramirez de Arellano, secretary, 0% interest (Docket No. 58, pg. 28). The court notes that the Debtor in its first SOFA filed on December 24, 2016 (Dkt #23) had disclosed on line item #28 that Ariel Rodriguez was the president and sole shareholder.

On April 27, 2016, the Debtor filed a *Request for Extension to file the Disclosure Statement and Reorganization Plan* (Docket No. 74) and the same was granted on May 9, 2016 (Docket No.78). On May 23, 2016, the Debtor filed its Chapter 11 Small Business Disclosure Statement and its Chapter 11 Small Business Plan (Docket Nos. 88 & 89). On May 27, 2016, an Order was entered conditionally approving the Disclosure Statement, fixing time for filing acceptances or rejections of the plan, and fixing the time for filing objections to the Disclosure Statement and to the confirmation of the Plan, combined with notice thereof and of the hearing on plan confirmation (Docket No. 91).

On June 28, 2016, the Puerto Rico Treasury Department filed its *Objection to the Final Approval of Debtor's Disclosure Statement and to the Confirmation of Debtor's Plan of Reorganization* (Docket No. 101). On June 29, 2016, the United States Trustee filed its *Objection to Disclosure Statement* (Docket No. 102). On June 29, 2016, Mr. Alvarez filed his *Objection to Final Approval of Disclosure Statement and Confirmation of Plan* (Docket No. 103). On June 30, 2016, the United States (Internal Revenue Service) filed its *Objection to Confirmation* (Docket No. 107). On July 4, 2016, the Debtor filed a *Motion for Extension of Time to File First Amended Disclosure Statement and for Entry of Order Extending the Deadline to Confirm Debtor's Plan of Reorganization Pursuant to Sections 1121(e)(3) and 1129(e)* (Docket No. 110).

On July 5, 2016, a hearing was held in which the Debtor admitted that after consulting with CPA Aida Escribano, further information must be included in the Disclosure Statement. The court noted that the motion for extension of time to file Disclosure Statement was filed yesterday and that Mr. Luis Alvarez's attorney Valle objects to the continuance. The court also noted that the IRS is concerned with the Disclosure Statement omissions regarding pre-petition and post-petition taxes, and has not kept current on post-petition taxes, as well as returned taxes. TKL and UST have no opposition to extension. The court ordered the following: "It appearing that it is uncontested that the Disclosure Statement does not include sufficient and adequate information, final approval is hereby denied. For the reasons stated in open court, the court hereby denies, without prejudice, the motion for extension of time (Dkt #110) as not in compliance with §1121(e)(3)" (Docket No. 112). On July 6, 2016, the Debtor filed an *Urgent and Renewed Motion for Extension of Time to File First Amended Disclosure Statement and for Entry of Order Extending the Deadline to Confirm Debtor's Plan of Reorganization Pursuant to Sections 1121(e)(3) and 1129(e)* (Docket No. 111). On July 6, 2016, Mr. Alvarez filed his *Objection to Urgent Motion* (Docket No. 113).

On July 8, 2016, the Debtor filed its *First Amended Disclosure Statement Dated July 8, 2016* and its *First Amended Plan of Reorganization Dated July 8, 2016* (Docket Nos. 115 & 116). On July 11, 2016, the court granted the Debtor's urgent motion by which it requested an extension of time to file an amended disclosure statement and extending the deadline to confirm the plan (Docket No. 118). On July 11, 2016 the court conditionally approved the amended disclosure statement, fixed the time for filing acceptances or rejections of the plan, fixed the time for filing objections to the final approval of the Disclosure Statement and to the confirmation of the plan, and gave combined notice of the hearing on final approval of the amended disclosure statement and confirmation of the plan (Docket No. 119). On August 9, 2016, the Treasury Department filed its *Objection to Confirmation of Debtor's First Amended Plan of Reorganization* (Docket No. 124).

On August 11, 2016, Mr. Alvarez filed his *Objection to Confirmation of Debtor's Amended Plan of Reorganization* based upon the following arguments: (i) the plan of reorganization does not meet the feasibility requirements pursuant to 11 U.S.C. §1129(a)(11) because the plan is not feasible and Debtor's projections are not realizable. The assumptions contained in the feasibility report are not supported by the MORs. The MORs demonstrate that the Debtor has not been paying its suppliers as the debts become due and that the post-petition accounts payables have been increasing. Thus, the minimal ending cash balances are artificially created at the cost of the vendors; (ii) the MORs show that the income derived by the Debtor on a monthly basis is insufficient for it to meet its operating needs and pay for the proposed plan; (iii) the Debtor has not shown that it holds an impaired accepting class that satisfies the requirement under 11 U.S.C. §1129(a)(8) and (10). The only impaired class under the plan is Class 3 and the same is dominated by the Department of Treasury that has objected the confirmation of the plan, and therefore deemed to have rejected it. Class 1 which consists of TKL Holdings LLC is "not impaired" as required by 11 U.S.C. §1124. TKL consented to be treated as if no default occurred and granted a moratorium to the commencement of the payments. This is not a debt restructuring of this creditor. The Debtor is artificially impairing this class to obtain an accepting class under the plan; and (iv) the Debtor's president has not provided "new value" under section 1129(b) because the payment must be up front and cannot be comprised of a promise to make future installment payments to the Debtor. The Debtor's president is providing $45,000 in two (2) years with a monthly payment of $1,875 which constitutes a payment plan and thus, he is not providing the cash "upfront" as an absolute contribution. Mr. Ariel Rodriguez's personal guarantee cannot be considered an infusion of money or money's worth to implement the plan. Thus, Mr. Ariel Rodriguez has failed to demonstrate that he will contribute new capital "reasonably equivalent" to the value of the Debtor's business or that the same is "substantial." Therefore, it is inequitable that the interest of the other shareholders of the Debtors be eliminated under the plan (Docket No. 127).

On August 16, 2016, the Debtor filed its *Statement Regarding Requirements of Section 1129(a)* (Docket No. 144). On August 16, 2016, a hearing was held in which the court ordered as follows: 1. The Disclosure Statement dated July 8, 2016 (Dkt #115) is finally approved as containing adequate information. The pending issues relate to confirmation and not disclosure. 2- Debtor presented testimony of Ariel Rodriguez and Ms. Aida Escribano. After considering the evidence presented, the court concludes that debtor has met its burden under §1121(e)(3)(A) that it is more likely than not that its plan may be confirmed within a reasonable period of time. 3- Hearing on confirmation will be held on October 17, 2016 at 9:30am. 4- Debtor shall promptly file all overdue MOR's. Court finds critical for confirmation that August 2016 and September 2016 MOR's be filed. 5- Legal memoranda re proper classification of claims and new value to allow share retention to be filed within 14 days. Replies due 14 days thereafter (Docket No. 146). The *Order Approving Disclosure Statement* was docketed on August 17, 2016 (Docket No. 147).

On August 30, 2016, the Debtor, Mr. Ariel Rodriguez, Debtor's president and shareholder, and TKL filed a *Joint Motion for Extension of Time to Comply with Order and Respond to Luis Alvarez's Objection to Confirmation of Debtor's Amended Plan of Reorganization* (Docket No. 158). The same was granted on September 1, 2016 (Docket No. 159). On September 14, 2016, Ariel Rodriguez, Debtor's president and shareholder filed his *Limited Response to Luis Alvarez's Objection to Confirmation of Debtor's Amended Plan of Reorganization* in which he argued the following: (i) given that the Debtor owns no material assets, the funding under the Financing Agreement would not have been provided without the new value contributions made and/or facilitated by Mr. Rodriguez. The Urgent Motion and the Financing Agreement recognized the new value contributions and requested the court to approve the same as part of the plan; (ii) the Court approved the settlement agreement, the financial agreement and the first new value contributions and made the following determination as to the first new value contributions: "Debtor's Chapter 11 Plan; New Value. Debtor's Plan shall include and recognize the following as 'new value' provided by Ariel Rodriguez to the

-6-

Debtor, which is essential to materialize the DIP Loan and to ensure the viability of the reorganized Debtor: (a) the Additional Collateral; (b) the Guarantee; and (c) the post-petition and post-confirmation services that Mr. Ariel Rodriguez provides to the Borrower's operations" (collectively, the "New Value") (Docket No. 51, paragraph 5); (iii) Mr. Alvarez did not seek reconsideration, clarification, or modification of the Order, the Urgent Motion, the Financing Agreement, or the Settlement Agreement. Thus, the Order is final and unappealable; (iv) section 7.3 of the Plan provides information as to the first new value contribution and the additional new value contribution; (v) pursuant to the law of the case doctrine and collateral estoppel the determinations made by the court regarding the first new value contributions should remain unaltered; (vi) the absolute priority rule and the ensuing need to consider the new value exception would only apply if the Debtor does not obtain the consent or approval of all impaired voting classes; (vii) if the Debtor does not obtain the approval of all voting impaired classes, the first new value contributions and the additional new value contributions examined in their totality are more than sufficient for the Debtor to retain the equity; (viii) Mr. Alvarez's guarantee is not the only new value. The new value is the conglomeration of factors detailed in the First New Value Consideration and the Additional New Value which is in the form of the real estate, the life insurance and the capital contributions; and (ix) the Debtor owns no real estate assets and no material assets, other than Mr. Rodriguez's commitment to continue operating the restaurant. Moreover, these are the shares of an insolvent entity which means that the value of these shares is nominal at most. The new value contributed by Mr. Rodriguez exceeds the limited value, if any, of the existing equity (Docket No. 164).

On September 14, 2016, the Debtor and TKL filed a *Joint Motion in Compliance with Court Order* to supplement their arguments; namely: (i) TKL is being impaired by Debtor's treatment under the proposed Chapter 11 plan pursuant to section 1124 because its legal, equitable and contractual rights under the Financing Agreement are being altered in terms of the interest rate to be paid (allowing for a 4.5% instead of the 12% default rate) of the commencement date of Debtor's payments and the damages that TKL has incurred such as

attorney's fees, expenses and costs related to the loan and Debtor's default are not being provided for in the proposed plan; and (ii) Mr. Alvarez's misinterpretation of the facts of the case and that the Debtor has "cured" the default under section 1124 is misplaced (Docket No. 165).

On September 16, 2016, the Treasury Department filed a *Motion to Inform Treasury's Intent to Reply to Debtor's Objection to Claims and Submitting Ballot Rejecting Debtor's Plan of Reorganization* (Docket No. 167). On September 24, 2016, the Treasury Department filed a *Request for Additional Time to File Its Answer to Debtor's Omnibus Objection to Claims Nos. 14 & 15* (Docket No. 170). The same was granted on September 28, 2016 (Docket No. 172). On September 28, 2016, the Debtor and the Treasury Department filed a *Joint Motion Requesting Additional Time of Seven Days to Inform Status on Possible Agreement Between the Parties* (Docket No. 173) and the same was granted on October 4, 2016 (Docket No. 176).

On September 29, 2016, Mr. Alvarez filed his *Response to Debtor, TKL and Mr. Rodriguez's Respective Memorandum of Law* contending that: (i) the alleged contributions of Mr. Rodriguez do not comply with the new value exception because: (a) a shareholder that offers to continue to operate the Debtor in exchange for "new value" is contrary to the prevailing precedent and thus, does not constitute "new value" under the "new value exception" to the absolute priority rule; and (b) Mr. Rodriguez's proposal for a contribution to be made in monthly installments cannot be considered "new value" because it is speculative and there is no certainty that the same will be made during the 24 month period; (ii) TKL has failed to demonstrate that it is impaired under 11 U.S.C. §1124 given that TKL consented to treatment under the plan as a regular secured creditor without any priority and without higher interest rate, and thus should not be entitled to vote. None of the terms and conditions of the loan are being modified except for the consented moratorium and TKL under the proposed plan will receive payment as provided in the post-petition financing agreement; and (iii) TKL's impairment was artificially created by the Debtor to obtain an impaired voting class in violation of 11 U.S.C. §1129(a)(10) (Docket No. 174).

Subsequently, on October 12, 2016, the Debtor and the Treasury Department filed a *Joint Motion as to the Consensual Treatment of Treasury's Claims Under the Plan* (Docket No. 185). On October 16, 2016, the Treasury Department filed its *Class 3 Ballot* accepting the Plan of Reorganization (Docket No. 189). On October 17, 2016, the Debtor filed the *Supplement to Statement Regarding Requirements of Section 1129(a)* in which it presented its position that Mr. Alvarez, as one of Debtor's shareholders, lacks standing to continue objecting to the Plan. The Debtor argues that, "[j]ust because an equity holder constitutes a party in interest within the purview of Sections 1109(b) and 1128(b) does not mean that it is entitled to object to all portions of a Chapter 11 Plan." The Debtor further argues that the equity holder must comply with the basic requirements of constitutional standing in accordance with Article III of the Constitution, namely; "(i) the plaintiff must have sustained an "injury in fact," which means that a legally-protected interest must actually have been invaded in a concrete and particularized manner; (ii) the injury must be traceable to the defendant's action, i.e., there must be a causal connection; and (iii) a ruling in favor of the plaintiff will likely redress the injury." The Debtor contends that the equity holders do not have standing: (i) to contest the feasibility of the plan because the plan does not propose to make any distribution or payment to equity holders. Therefore, confirmation of the plan will not affect the collectability or create an injury; and (ii) to question the applicability of the absolute priority rule doctrine given that they will not be affected by the application of such rule in the instant case. Moreover, this doctrine is inapplicable to the instant case because all the senior impaired classes have already accepted the plan (Docket No. 191). On October 17, 2016, the Treasury Department filed a *Motion Submitting to the Joint Motion Filed at Docket No. 85- Regarding Treasury's Approval of the Treatment to be Received under Debtor's Plan of Reorganization* (Docket No. 192).

On October 17, 2016 a confirmation hearing was held regarding Debtor's *First Amended Plan of Reorganization* (Docket No. 116) in which three (3) main issues were discussed. The first issue that was argued was whether the Debtor had two (2) impaired classes, Class 2 (IRS) and Class 4 (Equity Holders) that voted against the plan. Mr. Alvarez's argues that his vote

counts against confirmation pursuant to section 1129(a)(10) and Class 2 (the IRS) which did not vote for the plan is deemed as having voted against the plan. The Debtor's President, Mr. Ariel Rodriguez argues that Class 4 is not one of the classes that is counted under Section 1129(a) and it is not a class that is deemed to have voted. Moreover, insider votes do not count under 1129(a)(10). The Debtor's President argued that there are cases viewing the failure to vote as an acceptance of the plan. The second issue is to determine whether confirmation of the plan is feasible. The court noted that it is the Debtor's burden to establish feasibility. Lastly, the third issue is Mr. Alvalrez's standing to object to the plan confirmation, or certain sections (portions) of the plan that do not affect him. Mr. Alvarez as a minority shareholder is not receiving payment under the plan.

At the hearing, the court expressed concern that the priority claims do not appear to be classified under the amended plan. It is important to note, that both the Debtor and Mr. Alvarez agree that the Debtor's liquidation value is zero. If the Chapter 11plan can be confirmed under 1129(a), then the priority rule does not apply (Docket No. 195). On December 23, 2016, Mr. Alvarez filed a *Motion Reinstating Objection to Confirmation of Debtor's Amended plan of Reorganization* based upon lack of feasibility due to the following: (i) amended claim #9 in the amount of $26,516.11 due to Debtor's failure to comply with the payment of post-petition taxes for the periods covering December 31, 2015, September 30, 2016 and December 31, 2016; (ii) the State Insurance Fund filed a request for administrative expense due to Debtor's failure to meet with the first installment payment of the workers' compensation insurance policy for the year 2017 which was already due (Docket No. 207); (iii) the debtor has not filed the November 2016 monthly operating report which is crucial to determine whether the Debtor is in fact meeting its projections and complies with the feasibility requirement; (iv) the October 2016 monthly operating report establishes that the Debtor does not have a feasible operation in which it would be able to comply with the proposed plan payments under the plan of reorganization; (v) the monthly operating reports confirm that the plan is not feasible because the Debtor is unable to meet the sales projections and its post-petition account payables continue to increase;

-10-

and (vi) the post-petition payables listed in the monthly operating report do not include the post-petition taxing obligations to the IRS ($26,516.11) and the State Insurance Fund policy ($2,881.70). Thus, the Debtor's delinquent post-petition payments are approximately $97,000 and exceed significantly the projected amounts (Docket No. 208).

The court will first address whether the amended reorganization plan may be confirmed pursuant to section 1129(a) or whether the Debtor must employ the cramdown mechanism under section 1129(b).

*Confirmation of Plan pursuant to 1129(a)*

Confirmation of a plan of reorganization is governed by 11 U.S.C. §1129. In order to attain consensual confirmation of a Chapter 11 plan, the Debtor must satisfy each of the requirements of Section 1129(a). The plan proponent bears the burden of proving by a preponderance of the evidence that each requirement of Section 1129(a) is satisfied. See Irving Tanning Co. v. Me. Superintendent of Ins., 496 B.R. 644, 658 (B.A.P. 1st Cir.) citing In re Salem Suede, Inc., 219 B.R. 922, 932 (Bankr. D. Mass. 1998); In re Ponce de Leon 1403, Inc., 523 B.R. 349, 395 (Bankr. D.P.R. 2014). Section 1129(a)(1) provides that "[t]he court shall confirm a plan only if all of the following requirements are met: (1) [t]he plan complies with the applicable provisions of this title." 11 U.S.C. §1129(a)(1). Amongst the applicable provisions that the plan must comply with pursuant to paragraph (1) are sections 1122 and 1123 that provide for the classification and contents of plan. See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1129.02[1](16th ed. 2016). Section 1123(a)(2) provides that a plan shall, "specify any class of claims or interests that is not impaired under the plan." 11 U.S.C. §1123(a)(2). Section 1123(a)(3) states that a plan shall, "specify the treatment of any class of claims or interests that is impaired under the plan." 11 U.S.C. §1123(a)(3).

Section 1129(a)(8) provides that, "[w]ith respect to each class of claims or interests—such class has accepted the plan; or (B) such class is not impaired under the plan." 11 U.S.C. §1129(a)(8). Thus, consensual confirmation requires unanimity of all classes that are affected by the plan, meaning that each impaired class must have affirmatively accepted the plan. See

-11-

Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1129.02[8](16th ed. 2016) ("Paragraph (8) is central to the confirmation standards. It requires that each class either have accepted the plan or be unimpaired") citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 413 (1977), *reprinted* in App. Pt. 4(d)(i).

Section 1126 governs whether a class has accepted the plan. Fed. R. Bankr. P. 3018(a) provides in pertinent part, "[a] plan may be accepted or rejected in accordance with §1126 of the Code within the time fixed by the court pursuant to Rule 3017." Fed. R. Bankr. P. 3018(a). Fed. R. Bankr P. 3018(c) provides that, "[a]n acceptance or rejection shall be in writing, identify the plan or plans accepted or rejected, be signed by the creditor or equity security holder or an authorized agent, and conform to the appropriate Official Form." Fed. R. Bankr. P. 3018(c). Unimpaired classes are conclusively presumed to have accepted the plan. 11 U.S.C. §1126(f).[1] Section 1126(g) provides that, "a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests." 11 U.S.C. §1126(g). Section 1126(c) provides that a class of claims accepts the plan if the plan is accepted by creditors holding at least two-thirds in amount and more than one half of the number of the allowed claims of such class that has accepted or rejected the plan. 11 U.S.C. §1126(c). However, the Bankruptcy Code does not provide for the scenario in which a single creditor class does not vote.

The issue is whether failure to vote by a class that only has one member constitutes "deemed acceptance" of the plan. There is disagreement amongst the courts. "The case of In re Ruti- Sweetwater, Inc., holding that inaction by a nonvoting single class creditor constituted acceptance by the class, has been followed by some courts and rejected by others; the latter cases appear to reason that the failure or inability of a creditor to vote on a plan is not the

---

[1] Section 1126(f) provides: "[n]otwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation and acceptances with respect to such class from the holders of claims or interests of such class is not required." 11 U.S.C. §1126(f).

-12-

equivalent of the acceptance of the plan" <u>See</u> Alan N. Resnick & Henry J. Sommer, 7 <u>Collier on Bankruptcy</u> ¶ 1126.04(16th ed. 2016). "An unfortunate decision was rendered by the Court of Appeals for the Tenth Circuit which can have the effect if followed, of setting the law on its ear. In <u>In re Ruti-Sweetwater, Inc.</u>, 836 F. 2d 1263, 16 C.B.C. 2d 1459 (10th Cir. 1988), the court held that the plan could be confirmed even though a class did not vote for or against the plan. The trend of decisions since *Ruti-Sweetwater* rejects its holding, and interprets section 1126 as written. <u>See</u> <u>In re M. Long Arabians</u>, 103 B.R. 211 (B.A.P. 9th Cir. 1989); <u>In re Vita Corp.</u>, 358 B.R. 749, 751-52 (Bankr. C.D. Ill. 2007); <u>In re 7th Street and Beardsley P'ship</u>, 181 B.R. 426 (Bankr. D. Ariz. 1994); <u>In re Friese</u>, 103 B.R. 90 (Bankr. S.D.N.Y. 1989); <u>In re Townco Realty, Inc.</u>, 18 C.B.C. 2d 13, 81 B.R. 707 (Bankr. S.D. Fla. 1987); *see also* S. Rep. No. 989, 95th Cong., 2d Sess. 123 (1978), reprinted in App. Pt. 4(e)(i) *infra*." <u>Id.</u> at ¶ 1129.02[8] fn 125.

In <u>In re Adelphia Communs. Corp.</u>, 368 B.R. 140, 260-263 (Bankr. S.D.N.Y. 2007), the Bankruptcy Court followed the <u>Ruti-Sweetwater</u> decision because, similar to the Adelphia case, it involved a complicated plan of reorganization with a complex capital structure. The 30 classes that voted and accepted the plan accounted for more than $12 billion in debt and the classes in which no debtors voted totaled less than $50,000 (equating to less than .0005% of the claims). Judge Gerber in <u>In re Adelphia Communs. Corp.</u> stated as follows: "*Ruti-Sweetwater* carries even greater weight when applied to a case like this one, because the situation faced by the debtor-in-possession there was similar to that of the Debtors. Like this case, <u>Ruti-Sweetwater</u> involved a complicated plan of reorganization for a large multi-entity conglomerate with a sophisticated capital structure and various levels of indebtedness. Subjecting the plan to the higher requirements for cramdown, simply by reason of a class's failure to vote, made no sense. <u>In re Adelphia Communs. Corp.</u>, 368 B.R. at 261. Judge Gerber concluded his analysis regarding this issue (single creditor member classes failure to vote as a "deemed acceptance" of the plan) by distinguishing the <u>Adelphia</u> and the <u>Ruti-Sweetwater</u> cases from other smaller cases by stating, "I don't need to decide, and don't now decide, whether a like analysis would apply in a smaller case, where billions of dollars of claims hadn't been voted for and against

acceptance of a plan and the nonvoting claims were only a tiny proportion of that amount. In the Adelphia cases, and under these facts, I believe that Ruti-Sweetwater should be followed." Id. at 263.

This court opts to follow, absent the special and particular circumstances in In re Adelphia Communs. Corp., the line of cases that have held that failure to vote on confirmation of plan is not equivalent to acceptance of the plan pursuant to Fed. R. Bankr. P. 3018(c) and 11 U.S.C. §1126(c). The court concludes that Fed. R. Bankr. P. 3018(c), Sections 1126(c) and 1129(a)(8) require the affirmative acceptance of a creditor to accept (vote for) a plan. There are other sections of the Bankruptcy Code such as 11 U.S.C. §1126(f) (deeming an unimpaired class to have accepted the plan without voting), 1126(g) (deeming a class not to have accepted the plan if the claimholders of such class are not entitled to receive or retain any property under the plan) and §1111(a) (deeming a proof of claim to be filed for any claim or interest that is scheduled by the debtor) in which the language of the statute expressly provides for a presumption. See In re Townco Realty, Inc., 81 B.R. at 708 ("As contrasted with §1111(a) which provides that claims are "deemed filed" if scheduled by the debtor unless disputed, contingent or unliquidated, there is no provision deeming a failure to vote as constituting acceptance"); In re Vita Corp., 358 B.R. at 751 ("…Congress used the concept of a presumption of acceptance without voting, for an unimpaired class, in Section 1126(f). The same concept was clearly not incorporated into the acceptance requirements for impaired classes spelled out in Section 1126(c)"). If the claimholder in a single creditor class fails to vote, then that Class did not vote to accept the plan and the same is not deemed to have accepted the plan. See In re Vita Corp., 358 B.R. at 751 ("A debtor that creates single-creditor impaired classes is hardly in a position to complain when one such creditor's failure to vote foils consensual confirmation. If all impaired classes do not vote to accept the plan, the debtor must pursue confirmation by cramdown under Section 1129(b)").

In the instant case, the Debtor's *First Amended Plan of Reorganization Dated July 8, 2016* (Docket No. 116) (hereinafter referred to as the "amended plan") consists of four classes;

-14-

namely: (i) Class 1 which is comprised of a secured claim held by TKL Holdings III, LLC pursuant to 11 U.S.C. §506; (ii) Class 2 is a secured claim held by the IRS under 11 U.S.C. §506; (iii) Class 3 is comprised of all general unsecured claims allowed pursuant to 11 U.S.C. §502; and (iv) Class 4 is comprised of the Debtor's equity interests.  All four (4) classes are scheduled as impaired.

The Debtor, in its Amended Plan of Reorganization treats Class 2 (secured claim of the IRS) as an impaired class and provides the following treatment, "[t]he secured class of the IRS will b[e] paid according to the Bankruptcy Code in the same manner as its priority claim, i.e. in 48 equal monthly payments yielding a 4% interest per annum." Class 2 did not vote for the amended plan. Therefore, the same is not deemed to have accepted the plan.

The Debtor as the plan proponent explained the plan does not contain a classification for priority claims. The same will be paid pursuant to Article III and any unsecured portion would be paid according to Class 3 of the amended plan. Chapter 11 plan Section 3.01 *Unclassified Claims* provides that: "[u]nder section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes." Section 3.03 *Priority Tax Claims* provides that:

> "[e]ach holder of a priority tax claims will be paid as per §1129(a)(9)(C) of the Code in forty-eight (48) equal monthly payments bearing a 4% interest rate commencing on the Effective Date of the Plan. This includes the claim of the Puerto Rico Treasury Department, paid in accordance with the terms of the Settlement Agreement (Exhibit B to the Motion, defined below, under Docket No. 44). The Settlement Agreement is incorporated as if set forth in full herein and made an integral part of the Plan" (Docket No. 116, pg. 2).

The amended plan defines the "Effective Date of the Plan" as "… the later of the eleventh business day following the date of the entry of the order of confirmation or October 15, 2016. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated" (Docket No. 116, pg. 7).

-15-

On March 18, 2016,[2] the Internal Revenue Service (the "IRS") filed amended proof of claim #4-3 in the total amount of $116,259.52, allocated in the following manner: the amount of $92,629.69 is secured, the amount of $22,485.31 is listed as an unsecured priority tax claim and the remainder $1,144.52 is an unsecured general claim. The amended plan's treatment of the unsecured priority tax claim is inconsistent with section 1129(a)(9)(C) and thus, this unsecured priority tax claim is impaired as "…the unsecured tax claims that are affected by this section may not be classified in the plan. The reason for this is that they receive full payment, and thus are not impaired. As a consequence, so long as the treatment proposed in the plan conforms with that specified in subparagraph (C), the class need not be solicited for its vote, and also does not count as an impaired class for section 1129(a)(10) purposes." See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1129.02[9][c][i](16th ed. 2016). "Under section 1129(a)(9)(C) as revised, however, a plan proponent may only stretch out the payments for five years from the date of the order for relied." Id. at ¶ 1129.02[9][c][ii][C].

The inconsistency lies in that unsecured priority claims must be paid over a period that does not exceed five (5) years from the date of the order for relief. Section 3.03 provides that priority tax claims will be paid as per §1129(a)(9)(C) of the Code in forty-eight (48) equal monthly payments bearing a 4% interest rate commencing on the Effective Date of the Plan. The Effective Date of the Plan is defined as "… the later of the eleventh business day following the date of the entry of the order of confirmation or October 15, 2016. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated." At this juncture, no confirmation order has been entered, thus the amended plan as drafted exceeds the five year period from the date of the order of relief as provided pursuant to section 1129(a)(9)(C)[3]. The court finds that the treatment afforded to the

---

[2] On October 20, 2016, subsequent to the filing of the amended plan, the IRS filed amended proof of claim #4-4 disclosing that the total amount is $116,446.80 of which $92,629.69 is secured, $22,672.59 is disclosed as an unsecured priority tax claim and $1,144.52 is an unsecured general claim.

[3] 11 U.S.C. §1129(a)(9)(C) provides: "with respect to a claim of a kind specified in section 507(a)(8) of this title , the holder of such claim will receive on account of such claim regular installment payments in cash—

-16-

IRS' unsecured priority tax claim is not in conformity with sections 1129(a)(C) and 1123(a)(3) and thus, a separate class should have been created specifying that it is impaired and its vote had to be solicited.

Class 4 is comprised of Debtor's equity security holders and the proposed treatment for this class is as follows:

> "[a]ll interest of all shareholders will be cancelled on the Effective Date of the Plan. On such date, the reorganized Debtor shall execute an amended shareholders agreement pursuant to which (i) the reorganized Debtor shall convey 30% of the shares of the reorganized Debtor to TKL Holdings III, as provided and approved under the post-petition financing agreement as part of the terms upon which the post-petition financing was provided; and (ii) all remaining shares of the reorganized Debtor shall be conveyed to Mr. Ariel Rodriguez, as the only shareholder who provided new value to Debtor. The new value provided by Mr. Ariel Rodriguez is detailed below in Section 7.3" (Docket No. 116, pgs. 3-4).

Class 4 is impaired and is composed of the Debtor's equity security holders is deemed to have rejected the plan pursuant to section 1126(g), given that the proposed treatment is that all of the shareholders' interest will be cancelled on the Effective Date of the Plan. Consequently, if the class is deemed to have rejected the plan, the plan must satisfy the "cramdown" standards pursuant to section 1129(b). See Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1123.01[3][a](16th ed. 2016)("Because the class is deemed to have rejected the plan, the plan cannot satisfy the confirmation standards set forth in section 1129(a)(8) and must satisfy the "cramdown" standards of section 1129(b) with respect to such class in order to be confirmed"). "The class is treated as a nonaccepting class for purposes of confirmation regardless of the fact that a class member chooses to vote to accept the plan. In such a case, the vote of the accepting creditor is irrelevant. As a consequence, the plan can be confirmed only under the cramdown powers." Id. at ¶ 1126.08. In the instant case, Class 2 and Class 4 have not voted to accept the plan. Moreover, the plan proponent did not classify separately the unsecured priority tax claim

(i)     of a total value, as of the effective date of the plan, equal to the allowed amount of such claim;
(ii)    over a period ending not later than 5 years after the date of the order for relief under section 301, 302, or 303; and
(iii)   in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan (other than cash payments made to a class of creditors under section 1122(b))." 11 U.S.C. §1129(a)(9)(C).

-17-

of the IRS that is impaired since the treatment afforded does not satisfy the requirements of section 1129(a)(9)(C). Thus, the requirements of section 1129(b)(1) must be satisfied. However, before the cramdown scenario is considered, the plan proponent must prove that all of the requirements of section 1129(a) are satisfied, except 1129(a)(8). 11 U.S.C. §1129(b)(1); See also; Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1129.03[1](16th ed. 2016)("This means that the proponent of a cramdown must prove that all of the requirements of section 1129(a), including best interests of creditors and feasibility, are met").

*Feasibility 11 U.S.C. §1129(a)(11)*

The plan proponent bears the burden of demonstrating that each requirement of section 1129 has been satisfied. Amongst these elements is that the proposed plan is feasible. The plan proponent pursuant to section 1129(a)(11) must establish that confirmation of the plan, "… is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization is proposed in the plan." 11 U.S.C. §1129(a)(11). "In determining whether a plan meets the requirements of §1129(a)(11)… 'the bankruptcy court has an obligation to scrutinize the plan carefully to determine whether it offers a reasonable prospect of success and is workable.'" Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1129.02[11](16th ed. 2016) citing Travelers Ins. Co. v. Pikes Peak Water Co. (In re Pikes Peak Water Co.), 779 F. 2d 1456, 1460 (10th Cir. 1985) (quoting Pizza of Hawaii, Inc. v. Shakey's Inc. (In re Pizza of Hawaii, Inc.). 761 F. 2d 1374, 1382, 12 C.B.C. 2d 1227, 1237 (9th Cir. 1985). "The purpose of section 1129(a)(11) is manifold: 1) 'to prevent confirmation of visionary schemes which promise creditors and equity security holders more under a proposed plan that the debtor can possibly attain after confirmation,' In re Pikes Peak Water Co., 779 F. 2d at 1460, quoting In re Pizza of Hawaii, Inc., 761 F. 2d at 1382; 2) to prevent an abuse of the reorganization process by the confirmation of a plan of a debtor likely to return to bankruptcy, In re Prudential Energy Co., 58 B.R. 857, 862 (Bankr. S.D.N.Y. 1987); and 3) to promote the willingness of those who deal with post-confirmation debtors to extend the credit that such

-18-

companies frequently need." In re Agawam Creative Marketing Associates, Inc., 63 B.R. 612, 619 (Bankr. D. Mass. 1986). Generally courts consider the following factors to assess whether a plan is feasible: "(1) the adequacy of the debtor's capital structure; (2) the earning power of its business; (3) economic conditions; (4) the ability of the debtor's management; (5) the probability of the continuation of the same management; and (6) any other related matters which determine the prospects of a sufficiently successful operation to enable performance of the provisions of the plan." Alan N. Resnick & Henry J. Sommer, 7 Collier on Bankruptcy ¶ 1129.02[11](16th ed. 2016).

The Debtor in its Disclosure Statement discloses that the bankruptcy petition was filed on an emergency basis because they were unable to reach an agreement with the Treasury Department of Puerto Rico ("Treasury") and thus, Treasury proceeded to shut down its restaurant business. The Debtor has no real property, and personal property with a current value of $117,897.21, which includes accounts receivable in the amount of $45,856, inventory of wine bottles in the amount of $43,220.50 and kitchen equipment and appliances valued at $25,000 (Docket No. 17). The Debtor's liabilities consist mainly of: (i) Treasury with a scheduled claim for sales tax of $406,589.41 of which $216,647.71 is priority; (ii) Treasury with a scheduled claim for employee withholding taxes of $44,772.15 of which $34,848.84 is scheduled as a claim; (iii) Treasury with a scheduled claim for excise tax in the amount of $15,000; (iv) the IRS with a scheduled claim of $114,541.22 of which $21,800.52 is scheduled as a priority; and (v) nonpriority unsecured claims in the amount of $179,059.04 (Docket No. 58).

On February 9, 2016, the Debtor filed an *Urgent Motion to: (A) Approve Post-Petition Financing; (B) Approve Settlement Agreement with the Department of the Treasury of the Commonwealth of Puerto Rico; and (C) Shorten the Period to Respond to this Motion* (Docket No. 44). The same was unopposed and was approved by the court on February 24, 2016 (Docket No. 51). The Debtor through the Financing Agreement obtained the funds to satisfy Treasury's priority claim for employee withholding taxes and general unsecured claims for all

other amounts due as of the Petition Date as provided in the amended plan and to make improvements to the Debtor's facilities (Docket No. 116).

The Debtor proposes to fund its plan from three sources: (i) its operating revenue; (ii) the new value (section 7.03 of plan: (a) additional collateral; (b) the guarantee; and (c) the post-petition and post-confirmation services that Mr. Ariel Rodriguez provides to the Debtor's operation (collectively the new value) provided by Mr. Ariel Rodriguez; and (iii) the capital contribution of $45,000 which will be provided by Mr. Ariel Rodriguez during the first two (2) years of the plan which will enable the Debtor to have sufficient funds to enable plan payments.

*Monthly Operating Reports and Feasibility*

The Monthly Operating Report Comparison, which covers the months of November (partially) through May of the year 2016, shows that total business receipts and business cash disbursements were as follows: (i) for the month of November: $7,343.36 and $5,483.63; (ii) December: $82,089.24 and $78,993.40; (iii) January: $48,895.47 and $47,215.94; (iv) February: $111,986.33 and $102,497.56; (iv) March: $93,457.43 and $102,501.86; (v) April: $110,291.09 and $109,426.89; and (vi) May $113,514.36 and $102,035.83 (Docket No. 115, Exhibit D). The cash balances at the end of each month were as follows: (i) November: ($200.94); December: $2,894.90; January: $4,574.43; February: $14,063.20; March: $5,018.77; April: $5,882.97; and May: $17,361.50.

It is important to note that in the June 2016 there was an increase in cash in the amount of $68,433.12 due to the DIP loan with TKL. The Monthly Operating Reports for the months of June through December of the year 2016 disclose that total business receipts and business cash disbursements were as follows: June 2016: $139,856.72 (including proceeds of $68,433.12 from DIP loan) and $95,971.03: July 2016: $76,425.12 and $112,191.88; August 2016: $128,813.93 ($16,000 proceeds from DIP loan) and $137,809.52 ($30,638.29 allocated to leasehold improvements); September 2016: $111,603.18 and $124,459.70 ($5,725.16 allocated to leasehold improvements); October 2016: $111,022.79 (including proceeds of $11,119.26 from DIP loan) and $107,474.71 ($5,559.06 allocated to leasehold improvements- non recurrent);

-20-

November 2016: $103,369.78 and $106,323.05. No monthly operating reports have been filed for the months of December 2016 and January 2017.

The court notes that in Exhibit B of the monthly operating reports there was no ($0) rental expense reported for the months of July, August, October and November 2016. The rent expense that was reported for the most recent operating reports was as follows: June 2016: $7,818.43 and September 2016: $15,162.57. In the six (6) month period from June through November 2016, the cumulative rental expense was $22,981 and it was paid in two (2) months. However, for the months of December 2015 through May 2016 the rental expense reported was as follows: December 2015: $10,117.34; January 2016: $3,670.26; February 2016: $0: March 2016: $4,386.32, April 2016: $5,094 and May 2016: $3,832.97. In the six (6) month period from December 2015 through May 2016 the cumulative rent expense was $27,100.89 (Docket No. 115, Exhibit D). The projected monthly cash flow statement (12 months) from October 2016 through September 2017 include monthly rent expense of $5,094 for the first nine (9) months and $5,348 for the remaining three (3) months. The ending cash balances for September 2016 was $3,534.73 and $7,082.81 for October 2016, contrary to the original projections for October 2016, which has a projected beginning cash balance of $64,934 and an ending cash balance of $53,362. The amended projected monthly cash flow statement discloses ending cash balances for October 2016 of $5,680 and $5,962 for November 2016. However, the November cash sales were projected in the amount of $131,172 and the actual cash sales and account receivables collections was reported in the November 2016 monthly operating report in the amount of $82,621.46 (Docket Nos. 191 and 212). The court notes that the restaurant renovation was completed during the first and second week of August 2016 (Docket No. 195). There was also a power outage in September 2016 that lasted a couple of days.

The accounts payables balance pursuant to Exhibit C of the monthly operating reports for the last six (6) months that were reported were as follows: June 2016: $70,660.14: July 2016: was not provided; August 2016: $69,092.53; September 2016: $63,519.13; August 2016: $69,092.53; September 2016: $63,519.13; October 2016: $67,222.20 and November 2016:

$110,724.30. The account payables balance has not fluctuated much, except for the November 2016 balance which includes the amount of $33,861.16 which is a payable to BDO Puerto Rico, PSC, without this item the accounts payable balance would be $76,863.14. Unfortunately, the court is unable to determine how long the Debtor takes in paying its accounts payable because its Accounts Payables' exhibit does not list the date the debt was incurred and when the debt is due.

Although the Debtor's expert witness testified that the amended plan is feasible, the monthly operating reports show differently. After a thorough analysis of the monthly operating reports that have been filed and the amended cash flow projections, the court finds that the Debtor's earning power is barely sufficient to cover its operating expenses. An example that the Debtor lacks the capacity to sustain its operations, without considering the reorganization payments, is the fact that it is unable to pay the monthly rent and in the last six months it paid $22,981 in the month of June ($7,818.43) and in September 2016 ($15,162.57). In the November 2016 MOR, no rent was paid and there was an ending cash balance of $4,129.54 which pursuant to the original projections, the rent expense was disclosed in the amount of $5,094. Moreover, it is important to note that Debtor's cash flow increased due to the proceeds of the DIP loan. However, the amended projections disclose that in order to have a feasible plan, the Debtor must attain cash flows from operations in first three months of $22,590, $38,353 and $32,637 to sustain the months of low sales which are January and July. Moreover, the amended projections reflect capital contributions in the months of October 2016 in the amount of $26,000 and in January 2017 in the amount of $19,000 totaling $45,000. The capital contribution of $45,000 that Mr. Ariel Rodriguez was initially going to provide during the first two (2) years of the plan with a monthly payment of $1,875 is now proposed to being paid in three (3) months. These cash flows from operations are crucial for the Debtor to pay the other expenses (below the line from cash flow from operations) which consist of payments towards the new credit facility, reorganization payments, accounts payable, interest expense, etc. that are projected in the first (3) months in the following amounts: October 2016: $20,445 ($26,000

-22-

proceeds from capital contribution); November 2016: $38,1071 and December 2016: $38,012. Thereafter, the additional monthly expense levels to approximately $18,000, except for the months of January and July 2016. Moreover, the monthly operating reports for the months of December 2016 and January 2017 have not been filed, thus the court is unable to ascertain the Debtor's most recent financial condition. The court finds that the Debtor failed to establish that it generates sufficient cash flow to fund both its operations and the obligations under the amended plan. Thus, the amended plan of reorganization is not feasible pursuant to 11 U.S.C. §1129(a)(11).

Conclusion

The Debtor's amended reorganization plan may not be confirmed pursuant to section 1129(a) or 1129(b) because it fails to comply with 11 U.S.C. §1129(a)(9)(C) and 1129(a)(11). Thus, the court does not need to delve into the other legal issues presented such as whether Mr. Alvarez, albeit a party in interest, had standing to object to portions of the amended plan that do not affect him and whether new value exception is applicable.

For the reasons stated herein, the confirmation of the Debtor's First Amended Plan of Reorganization is hereby denied.

SO ORDERED.

In San Juan, Puerto Rico, this 28th day of March, 2017.

Enrique S. Lamoutte
United States Bankruptcy Judge

-23-